United States District Court

For the Northern District of California

1

2

3

4

5

6

7          IN THE UNITED STATES DISTRICT COURT

8        FOR THE NORTHERN DISTRICT OF CALIFORNIA

9

10   EUGENE BURGER, et al,                    No C 02-2309  VRW

11        Plaintiffs,                              ORDER

12        v

13   MICHAEL KUIMELIS, et al,

14        Defendants.

15   _____

16

17   MICHAEL KUIMELIS, et al,

18        Counterclaimants,

19        v

20   EUGENE BURGER, et al,

21        Counterdefendants.

22   _____/

23

24        Currently before the court is yet another round of

25   motions in this case seeking various forms of relief.  The court

26   has set a schedule for dispositive motions, pretrial including

27   motions in limine and trial.  A resolution is in sight.

28        In this latest cycle of motions, the Burger parties move

**United States District Court**

For the Northern District of California

to dismiss portions of Kuimelis' sixth amended counterclaim ("SACC").  Doc #373 (SACC); Doc #410 (Mot Dismiss SACC).  Additionally, the Burger parties move to dismiss Acordia's counterclaim ("ACC").  Doc #371 (ACC); Doc #412 (Mot Dismiss ACC).  Kuimelis also moves to disqualify one of the Burger parties' counsel, Daniel B Beck of the Beck Law Offices.  Doc #346 (Mot Disq).  Next, Kuimelis seeks to intervene as an individual limited partner of plaintiff Via Hidalgo Associates.  Doc #345 (Mot Intv).  Finally, the Burger parties move pursuant to FRCP 21 the court for an order dropping Apollo as a plaintiff.  Doc #436 (Mot Drop).

The parties and the court are familiar with the facts of this case so the court will not burden this order with an unnecessary factual recitation.

II

*Motion to Dismiss Kuimelis' SACC*

On June 28, 2004, the court addressed the Burger parties' motion to dismiss Kuimelis' fifth amended counterclaim (FACC).  Doc #368 (Order).  The court denied the motion to dismiss as to all claims in the FACC save five:  (1) claims one through three brought pursuant to 18 USC § 1962 ("RICO"), (2) claim seven brought pursuant to Cal Bus & Prof Code § 17200 inasmuch as it was based on events occurring before October 13, 1995, and (3) claim ten for recovery under an implied contractual indemnity theory.  Id at 20, 40, 42.

As to the three RICO counts, the court concluded that Kuimelis had simply failed to plead adequately the damages being sought.  Id at 14 (holding that the "conclusory allegations in the

2

United States District Court

For the Northern District of California

FACC" regarding RICO damages "did not suffice to withstand a motion to dismiss under FRCP 12(b)(6)."). As to claim seven, the court concluded that any claims which accrued prior to October 13, 1995, were time-barred and Kuimelis had failed to plead any fraudulent affirmative actions taken by the Burger parties sufficient to toll the statute of limitations. Id at 39. As to claim ten, the court held that Kuimelis had failed to "frame the implied contractual indemnity claim as one for declaratory relief." Id at 42. All of the dismissals were without prejudice and Kuimelis was given leave to amend to remedy the deficiencies. Id.

Kuimelis filed the SACC on July 14, 2004. The SACC was essentially a carbon copy of the FACC save a few additional paragraphs specifically addressing the deficiencies enunciated above. Nevertheless, the Burger parties have filed a new motion to dismiss the entire SACC (Doc #460), rehashing and duplicating the vast majority of the first motion to dismiss. The Burger parties state that they "re-raised" these previously argued grounds for dismissal "properly [to] preserve" these rejected grounds on appeal. Doc #460 at 1. There is no need to waste time figuring out the Burger parties' motives; the rejected grounds are preserved. The court will instead focus on the Burger parties' new grounds for dismissal.

It should be noted that the SACC, in realleging the seventh cause action for unfair business practices, limits this claim to practices that occurred "from October 13, 1995, to October 13, 1999." SACC at 37, ¶134. Because these claims are not time-barred, the Burger parties do not raise any new grounds for dismissal of the SACC's seventh cause of action. Nor do the Burger

parties challenge the sufficiency of the tenth cause of action as pled in the SACC.  Instead, the Burger parties limit their new dismissal arguments to the RICO claims, as well as the eleventh cause of action for money had and received.

**A**

To remedy the inadequate pleading of damages found in claims one through three brought pursuant to RICO, the SACC states that Kuimelis has suffered

> concrete financial loss includ[ing], without limitation, [1] attorney's fees and other expenses incurred by [Kuimelis] arising from the HUD investigation and subsequent criminal trial of Burger, [2] damage to his business reputation directly resulting from [Burger]'s targeting and use of [Kuimelis'] reputation to carry out the fraudulent conduct, and/or [3] lost business income and opportunities that [Kuimelis] would otherwise have realized in the absence of [Burger]'s unlawful conduct.
> SACC at 27, ¶93.

The Burger parties do not take issue with the "lost business income" injury allegations.  They do, however, attack the other two alleged RICO injuries.

The Burger parties first argue that Kuimelis has not pled a cognizable RICO injury for attorney's fees arising from the HUD investigation and Burger trial.  Attorney's fees are special damages that must be pled with specificity pursuant to FRCP 9(g) and, according to the Burger parties, Kuimelis has failed to meet this specificity requirement.  Doc #410 at 10-11.  Specifically, the Burger parties argue that Kuimelis is required to plead "the special circumstances or specific facts giving rise to the special damages, the specific type of damages [and] the amount of such special damages."  Id at 11.  The Burger parties misunderstand the

United States District Court
For the Northern District of California

United States District Court

For the Northern District of California

requirements of FRCP 9(g).

"Special damages are those that, although resulting from the commission of the wrong, are unusual for the claim in question and not normally associated with the claim."  James W Moore, 2 Moore's Federal Practice § 9.08(1)(a) (Bender & Co 3d ed 2000). "The goal of Rule 9(g) is to inform defending parties of the nature of the damages claimed in order to avoid surprise and to inform the court of the substance of the complaint."  NTBS Storage & Retrieval, Inc v Kardex Systems, Inc, 2001 US Dist LEXIS 24605, *6 (ND Tex 2001) (citing Great American Indemnity Co v Brown, 307 F2d 306, 308 (5th Cir 1962) (emphasis in original)).  Essentially, "[a]llegations of special damage must be sufficient to permit a defending party to begin preparing a defense."  Moore, Moore's Federal Practice at § 9.08(b).

Assuming arguendo that the attorney's fees in this case can be characterized as "special damages" for the purposes of Rule 9(g), the court concludes that the requirements of the rule have been satisfied.  The SACC informs the Burger parties of (1) the nature of the damages, (2) how the damages were incurred and (3) the period when they were incurred.  Such allegations clearly apprise the Burger parties of the "nature" of damages Kuimelis seeks and permits them to begin preparing a defense.

Next, the Burger parties argue that "damage[] to business reputation injury is not a cognizable injury under RICO."  Doc #410 at 13.  Kuimelis disagrees, stating that "courts have reached the opposite conclusion" regarding injury to business reputation.  Doc #438 at 10.  The "courts" referenced by Kuimelis include the Fifth Circuit and the United States District Court for the District of

United States District Court

For the Northern District of California

South Carolina.  See <u>Khurana v Innovative Health Care Systems, Inc</u>, 130 F3d 143 (5th Cir 1997), rev'd on other grounds, <u>Teel v Khurana</u>, 529 US 494 (1998); <u>Sadighi v Daghhighfekr</u>, 36 F Supp 2d 279 (D SC 1999).  Unfortunately for Kuimelis, courts in this circuit support the Burger parties' legal assertion.  See <u>Oscar v University Students Co-op Ass'n</u>, 965 F2d 783 (9th Cir 1992) (en banc); see also <u>In re Teledyne Defense Contracting Derivative Litigation</u>, 849 F Supp 1369, 1372n1 (CD Cal 1993).

In <u>Oscar</u>, the Ninth Circuit held that injuries to business or property are not actionable under RICO unless they result in "tangible financial loss." <u>Oscar</u>, 965 F2d at 785. Future financial loss, future loss of enjoyment of property and peace of mind, while no doubt injuries, are, according to the Ninth Circuit, "valuable <u>intangible</u> interests," and "precisely the sort of speculative future injury which RICO disdains." Id at 787 (citing <u>Hecht v Commerce Clearing House</u>, 897 F2d 21, 24 (2d Cir 1990) (emphasis added)).  The Ninth Circuit made clear, however, that it was not denigrating the severity of injury to these intangible interests and reiterated that a injured party "can recover for such injuries under a myriad of state law causes of action."  Id.  The party, however, "cannot do so under RICO."  Id.

One year after <u>Oscar</u> was decided, Judge David Kenyon of the Central District of California faced the question presently before the court:  Is harm to business reputation a cognizable injury under RICO? <u>Teledyne</u>, 849 F Supp at 1372n1.  In <u>Teledyne</u>, shareholders of Teledyne, Inc (Teledyne) brought a derivative suit against the board of directors, as well as certain present and former officers alleging a pattern of criminal and otherwise

United States District Court

For the Northern District of California

fraudulent conduct.  Id at 1370.  Plaintiffs purported to state
claims under all four RICO provisions, alleging, among other
injuries, that Teledyne had suffered injury to its "business
reputation."  Id at 1372n1.  In analyzing defendants' Rule 12(b)(6)
motion, Judge Keynon held that injury to business reputation was
not a cognizable injury because "injury to such an intangible
property interest is not cognizable under RICO in the circuit."  Id
(citing Oscar, 965 F2d at 785).

        The court agrees with Judge Keynon that Oscar forecloses
a party from pleading a RICO injury based upon injury to business
reputation.  Injury to an intangible interest such as business
reputation is simply too speculative under Oscar.  While Kuimelis
is correct that other courts have come out differently on the
issue, this court is bound by Ninth Circuit pronouncements.

        Because counts one through three state two cognizable
RICO injuries, the court will simply STRIKE the portions of counts
one through three that allege injury to business reputation.  With
these three provisions stricken, counts one through three state a
claim under RICO and thus the Burger parties' motion to dismiss
counts one through three of the SACC is DENIED.


                                    B

        Finally, the Burger defendants request the court,
pursuant to FRCP 12(e), to order Kuimelis to provide a more
definite statement pertaining to the eleventh cause of action in
the SACC, a claim for money had and received.  Doc #460 at 11.
Specifically, the Burger parties assert that because the eleventh
cause of action is premised on Kuimelis' "mistake" in over-

United States District Court

For the Northern District of California

1    refunding monies to the Burger parties, Kuimelis is required to

2    plead this cause of action with particularity pursuant to FRCP

3    9(b).  The court agrees.  While it is true, as Kuimelis argues,

4    that California pleading law does not require pleading specificity

5    on this state law common count, it is federal procedure, not state

6    procedure, that govern pleading standards in federal court cases.

7    <u>Hanna v Plummer</u>, 380 US 460 (1965).

8         The eleventh cause of action for money had and received

9    is devoid of <u>any</u> information regarding the "who, what, where, when

10   and how of the mistake."  Moore, <u>Moore's Federal Practice</u> at §

11   9.02(2).  Accordingly, the Burger parties' motion for a more

12   definite statement is GRANTED.  Kuimelis must serve and file a more

13   definite statement not later than May 23, 2005.  FRCP 12(e).

14

15                                III

16                        *Motion to Dismiss ACC*

17        On July 9, 2004, Acordia filed its counterclaim against

18   the Burger parties.  Doc #371 (ACC).  The ACC alleges two causes of

19   action:  (1) fraud and (2) declaratory relief/equitable indemnity.

20   Id at 12-13, ¶¶52-60.  The Burger parties move to dismiss the ACC

21   in its entirety.  Doc #412.  Alternatively, the Burger parties

22   request the court to order Acordia to provide a more definite

23   statement.  Id.  The motion is DENIED.

24

25                                 A

26        The Burger parties seek to dismiss Acordia's first cause

27   of action for fraud on several grounds.  First, the Burger parties

28   argue that the fraud claim does not meet the heightened pleading

                                  8

requirements of Rule 9(b).  Next, they claim the alleged damages flowing from the fraud are "special damages" and Acordia has not met the heightened pleading requirements of Rule 9(g).  The Burger parties' arguments fail to persuade.

The goal of Rule 9(b) is to give defendants notice of the particular conduct alleged to be fraudulent so that they can defend against the charge.  <u>Semegen v Weidner</u>, 780 F2d 727, 731 (9th Cir 1985).  In addition to the usual "who and when" specifics, in "cases concerning * * * omission of facts, Rule 9(b) typically requires the plaintiff to plead the type of facts omitted, where the omitted facts should have been stated and the way in which the omitted facts made the representations misleading."  Moore, Moore's Federal Practice at § 9.03(b).  The ACC meets these requirements in abundance.  The ACC pleads the parties to the fraud (Kuimelis and Burger parties), the time period of the fraud and the type of facts omitted by the Burger parties (i e, that they were helping Kuimelis misappropriate monies due to Acordia).  Moreover, the ACC asserts that if the Burger parties had informed Acordia of these omissions, it would have taken action against Kuimelis and the Burger parties.  These allegations are more than sufficient to allow the Burger parties (who are all intimately familiar with the events surrounding this cause of action) to answer and prepare a defense against these allegations of fraud.

Next, the Burger parties assert that the fraud damages alleged in the ACC, namely the legal costs associated with defending Acordia during (1) the HUD investigation and (2) the indemnity claims brought by Kuimelis, are "special damages" and have not been pled with the required specificity of Rule 9(g).  The

United States District Court

For the Northern District of California

**United States District Court**

For the Northern District of California

court rejects this argument under the same legal reasoning employed in rejecting the Rule 9(g) argument offered by the Burger parties in relation to Kuimelis' SACC.  See *supra* Part II(A).

Also relating to damages, the Burger parties argue that the ACC fraud claim must be dismissed because "it fails to allege a definite amount of damages" as required by California law.  This argument is unavailing, for, as stated above, California pleading law does not govern this case; federal law governs.  <u>Hanna</u>, 380 US 460.  The Burger parties offer no federal case law requiring a party to allege a definite amount of damages.

**B**

Next, the Burger parties move to dismiss Acordia's second cause of action, which seeks recovery under an implied contractual indemnity theory.  Doc #412 at 15.  Specifically, the Burger parties argue that this claim must be dismissed because it has not yet accrued.  Id ("An indemnity claim <u>does not accrue</u> until after the alleged indemnitee suffers a loss through a payment of a judgment or settlement debt.") (quoting <u>Smith v Parks Manor</u>, 197 Cal App 3d 872, 882 (1988) (emphasis in original)).  The Burger parties, however, overlook the fact that Acordia has framed the implied contractual indemnity claim as one for <u>declaratory relief</u>.  See ACC at 12-13 ("Declaratory Relief/Equitable Indemnity").  As the court stated in its June 28, 2004, order regarding Kuimelis' claim for implied contractual indemnity:  "[A]n indemnity claim may be brought as a declaratory action in conjunction with the principal action."  Doc #368 at 41 (citing <u>Allen v Southland Plumbing</u>, Inc, 201 Cal App 3d 60, 65 (1988)).

United States District Court

For the Northern District of California

1   Accordingly, the motion to dismiss Acordia's second cause

2   of action is DENIED.  Nor is it appropriate to require Acordia to

3   provide a more definite statement; the allegations surrounding this

4   claim are sufficient and far from "vague and conclusory," as the

5   Burger parties contend.  Doc #412 at 16.

6

7                                  IV

8                         *Motion to Intervene*

9        One of the 72 property owners named as a plaintiff in the

10  FAC is Via Hildago Associates (VHA), a limited partnership that was

11  allegedly overcharged by Kuimelis.  Fittingly, given the tangled

12  web this case presents, Kuimelis is a limited partner in VHA and,

13  in one more twist, EBMC is the general partner in VHA.

14       Five months after the FAC was filed and almost three

15  months after discovery had closed, Kuimelis filed a Rule 24 motion

16  to intervene as a limited partner of VHA to bring a derivative suit

17  "assert[ing] claims on behalf of [VHA] that are not currently being

18  pursued by it."  Doc #345 at 5.  Specifically, Kuimelis claims that

19  VHA has a cause of action against EBMC (as a property manager of

20  VHA's property) because EBMC "converted monies (in the form of

21  premium returns and surcharges) from" VHA.  Id at 2.  Additionally,

22  Kuimelis' derivative suit will bring claims against EBMC (as the

23  general partner of EBMC) for "breach of the duty of care and

24  fiduciary duty of the general partner, among other torts."  Doc

25  #462 at 8.  Whatever the merits of this derivative suit, Kuimelis

26  cannot intervene to bring such a suit in this action.

27       The Ninth Circuit has adopted a four-part test for

28  deciding whether to grant an application to intervene pursuant to

                                  11

United States District Court

For the Northern District of California

Rule 24(a):

> (1) the applicant's motion must be timely; (2) the applicant must assert an <u>interest relating to the property or transaction which is the subject of the action</u>; (3) the applicant must be so situated that without intervention the disposition of the action may, as a practical matter, impair * * * that interest; and (4) the applicant's interest must be inadequately represented by the other parties. <u>Sagebrush Rebellion, Inc v Watt</u>, 713 F2d 525, 527 (9th Cir 1983) (emphasis added).

Assuming arguendo that Kuimelis' application to intervene is timely, Kuimelis application fails the second and third <u>Sagebrush</u> prongs.

First, VHA's "interest" in the proposed derivative suit is not related to the property or transaction which is the subject of the FAC.  In the FAC, VHA (along with other property owners) claim that Kuimelis allegedly overcharged them.  The <u>property</u> which is the subject of this action is the overcharged amount and the <u>transaction</u> at issue is Kuimelis' alleged overcharging.  Accordingly, VHA's interest in the FAC is the return of the difference between the actual insurance premium amount and the overcharged amount.

In the proposed derivative suit, however, Kuimelis wants VHA to sue EBMC for allegedly converting premium returns and surcharges in its capacity as a property manager and a general partner of VHA.  Thus, the <u>property</u> at issue in the proposed derivative suit is money that EBMC (not Kuimelis) allegedly converted.  The <u>transaction</u> at issue is EBMC's failure to return such monies to VHA.

Accordingly, the interest, property and transaction at

12

United States District Court

For the Northern District of California

issue in the proposed derivative suit are not related to the property or transaction at issue in the FAC.  In essence, Kuimelis seeks to introduce an entirely new and unrelated action that could be litigated in some other suit.  This is not the purpose of Rule 24.  Rather, Rule 24 would allow Kuimelis to intervene if he did not believe VHA's interest in retrieving the overcharges allegedly charged by Kuimelis were not being adequately represented, as such a retrieval is the point of the FAC.  Kuimelis, however, does not make such an argument; indeed, Kuimelis appears to contend that those interests are being represented too well (i e, VHA should not be suing him for reimbursement at all).

Kuimelis also fails to demonstrate how VHA's interest in bringing suit against EBMC will be impaired if Kuimelis is not allowed to intervene.  Rather, Kuimelis explains the egregiousness of EBMC's alleged conversion and then jumps to the conclusion that VHA's interest "will be foreclosed if he is not allowed to intervene."  Doc #345 at 15.  Kuimelis misunderstands the third Sagebrush prong.  VHA's interest is not impaired simply because Kuimelis will have to file a separate derivative suit.  To meet the third Sagebrush prong, Kuimelis is required to demonstrate that disposition of the current action will (1) prevent a future derivative suit on behalf of VHA against EBMC or (2) create a diminution in strength, value or quality of the derivative suit.  Kuimelis does not address either of these scenarios.  In other words, it is not a "now or never" situation for Kuimelis' proposed derivative suit against EBMC.

Kuimelis' motion to intervene is accordingly DENIED.

//

# V

## *Motion to Disqualify*

Next, Kuimelis has filed a motion to disqualify Daniel Beck ("Beck") as counsel for EBMC and 69 of the property owners, including VHA.  Doc #346.  The motion to disqualify is deeply intertwined with the motion to intervene discussed above.  Kuimelis argues that Beck, who represents both VHA and EBMC, should be disqualified because he has not brought suit on behalf of VHA against EBMC for conversion (i e, the suit Kuimelis seeks to bring through his intervention).

The argument goes as follows:  Beck represents EBMC and 69 property owners in the suit against Kuimelis to retrieve the alleged premium overcharges.  Beck's representation, however, presents an actual conflict of interest because the 69 property owners, and in particular VHA, have causes of action against EBMC for allegedly converting money (i e, the premium returns and surcharges).  Beck, according to Kuimelis, has failed to provide his undivided loyalty to the 69 property owners by failing to pursue any claims against EBMC on their behalf.  Id at 2.  In essence, Kuimelis claims that Beck is putting the interests of EBMC ahead of the property owners' interests.  To be clear, Kuimelis is seeking to disqualify Beck from representing any of the 69 property owners; not just VHA.

Additionally, Kuimelis argues that Beck must be disqualified because he is a percipient witness in this action; Beck must testify regarding material issues related to Kuimelis' affirmative defense of statute of limitations as well as alleged conversations between Beck and Kuimelis during the HUD

14

investigation.  Id at 2.  Neither argument is persuasive.

## A

### *Conflict of Interest*

The parties agree that Kuimelis, as a limited partner, has standing to raise the actual conflict issue on behalf of VHA. EBMC argues, however, that Kuimelis lacks standing to raise any issues regarding conflicts of interest on behalf of the remaining 68 property owners.  Kuimelis counters that, although he is a "non-client" with respect to the remaining 68 property owners, "courts have recognized that a non-client has standing to bring a motion [to disqualify] where * * * the attorney's breach so infects the litigation that it impacts that moving parties' interests."  Doc #407 at 10 (citing <u>Colyer v Smith</u>, 50 F Supp 2d 966, 971 (CD Cal 1999) and <u>Decaview Distribution Co, Inc v Decaview Asia Corp</u>, 2000 US Dist LEXIS 16534 (ND Cal 2000)).  Regarding the 68 non-moving property owners, Kuimelis states that "Beck's conflict is pervasive and infects this litigation to an extent that impacts Kuimelis' interest."  Id.

Assuming that such third-party standing exists as a legal proposition, the court concludes that Kuimelis, as a limited partner in VHA, has failed to demonstrate that he has such standing.  Kuimelis simply makes the conclusory assertion that Beck's <u>alleged</u> pervasive breach will "impact Kuimelis' interest." This conclusory statement, however, is unsupported.  Assuming Kuimelis succeeds in disqualifying Beck from representing VHA and a new VHA lawyer brings suit against EBMC for the alleged conversion, Kuimelis has failed to demonstrate how <u>his</u> interest would be

affected by Beck's continued representation of the remaining 68 plaintiffs.  To be sure, Kuimelis goes on at quite some length regarding Beck's alleged wicked motive and desire to prevent these 68 property owners from recovering converted funds from EBMC.  But again, Kuimelis fails to show how this has a sufficient impact on <u>his</u> interest so as to confer third-party standing upon him. Moreover, as discussed below, the evidence offered by Kuimelis to "prove" that an actual conflict even exists in Beck's dual representation of EBMC and the property owners is quite thin.

As mentioned above the parties concede that Kuimelis has standing to raise any conflict of interests arising from Beck's dual representation of EBMC and VHA.  This motion is not like an ordinary motion to disqualify which is based upon a lawyer's former representation of a client versus his present representation of a client.  Usually, the existence of a potential or actual conflict is clear, as the lawyer either did or did not represent a client. The inquiry in these cases ordinarily proceeds to other issues such as possession and disclosure of confidential information or whether a valid waiver of conflicts has been obtained.

In this case, however, the existence of a conflict is <u>hotly</u> disputed.  Kuimelis claims that EBMC converted funds from VHA and thus VHA has a cause of action against EBMC, thus giving rise to the alleged conflict in Beck's dual representation on EBMC and VHA.  Beck and EBMC, however, vehemently deny that EBMC converted funds from the property owners and thus argue that VHA has no cause of action against EBMC, thus alleviating any concerns about Beck's dual representation.  In other words, Kuimelis is moving to disqualify Beck from representing VHA based upon VHA's right to sue

United States District Court

For the Northern District of California

EBMC for conversion –– a right that <u>only</u> Kuimelis claims exists.

Whether to disqualify counsel is a decision committed to the discretion of the district court. <u>Gas-A-Tron of Arizona v Union Oil Co of California</u>, 534 F2d 1322, 1325 (9th Cir 1976). "Because disqualification is a drastic measure, it is generally disfavored and should only be imposed when absolutely necessary." <u>Concat LP v Unilever PLC</u>, 350 F Supp 2d 796, 814 (ND Cal 2004) (Illston, J). As the party seeking disqualification, Kuimelis bears the burden of proving that disqualification is <u>absolutely</u> necessary. Id. "A motion to disqualify should be accompanied by declarations and admissible evidence sufficient to establish the factual predicate upon which the motion depends." <u>Colyer</u>, 50 F Supp 2d at 967. Finally, "[b]ecause a motion to disqualify is often tactically motivated and can be disruptive to the litigation process, * * *[it] is generally disfavored." <u>Concat</u>, 350 F Supp 2d at 814. Applying these legal principles to the present motion, the court concludes that Kuimelis has failed to come forward with sufficient evidence to establish that an actual conflict exists and thus he has not carried his burden of showing that disqualification is absolutely necessary.

Kuimelis claims that an actual conflict exists in Beck's representation of EBMC and VHA because "EBMC's principal and agents have admitted taking monies belonging to the [p]roperty [o]wners." Doc #346 at 5. First, Kuimelis states that EBMC illegally kept California worker's compensation premium returns that were supposed to be distributed to the property owners. Id. The <u>only</u> evidence offered by Kuimelis to support this allegation is the deposition testimony of Maureen Stroub (an EBMC agent). Doc #358 (Pav Decl),

17

United States District Court

For the Northern District of California

Ex B (Stroub Depo).

After reading Stroub's deposition, however, the court disagrees with Kuimelis' assertion that EBMC has "conceded" that it kept these insurance premium returns. Specifically, when Stroub was asked whether there was "any effort * * * made by EBMC to try to allocate the [insurance premium returns] to the specific projects that had contributed to buying that Worker's Compensation coverage," Stroub responded that she "wouldn't know about that." Doc #358, Ex B at 155:22-156:3. When asked if she "even kn[e]w if any effort was made to [allocate these return premiums] by anybody," Stroub responded "I don't." Tr at 156:7-9. From this testimony, Kuimelis informs the court that EBMC has conceded that it did not distribute to VHA (or the other property owners) the insurance premium returns to which they were entitled. This grossly exaggerates Stroub's testimony. Stroub testified that she "would not know" and "did not know" about any allocations of premium returns by EBMC to the property owners. Stroub's lack of knowledge, however, does not lead to the conclusion that no such allocation ever occurred.

Next, Kuimelis claims that another EBMC agent, Kristi Wells, has "acknowledged the existence of a covert surcharge" on the property owners' worker's compensation premiums and that EBMC converted the funds produced by this surcharge to its own use. Doc #346 at 5. In her deposition, Wells states that "[t]here was a period of time in which the rates were adjusted by 10 percent." Doc #358, Ex A (Wells Depo) at 979:13-14. Wells states that "[i]t was recommended by Mike Kuimelis that we add ten percent on the payroll to help for anticipated increases that we were going to be

18

United States District Court

For the Northern District of California

hit with * * *.   [It was done] to assist the properties with the potential increase that they were going to be having."   Tr at 980:1-7.   When asked what became of these "10 percent amounts," Wells stated that she did not know.   When specifically asked if she knew if these extra funds were indeed ever "used to assist with anticipated premium increases," Wells again stated that she did not know.   Id at 8-16.

From this testimony, Kuimelis asserts that EBMC has conceded that it (1) charged a 10 percent "covert" surcharge on all premiums it charged the property owners and (2) converted this extra money to EBMC's own use.   Doc #346 at 5.   Again, this conclusion stretches Wells' testimony beyond recognition; there is no discussion whether the property owners knew of this 10 percent adjustment nor is there any indication that Wells knew what was eventually done with the money produced from the surcharges.

Accordingly, the evidence offered by Kuimelis to prove that VHA and the other 68 property owners have a cause of action against EBMC is extremely thin and far from compelling.   Moreover, this evidence is the only evidence offered, apart from Kuimelis' conclusory allegations of EBMC's dastardly acts and improper motive.   This evidence does not satisfy Kuimelis' burden of demonstrating that the "drastic remedy" of disqualifying Beck from representing VHA is "absolutely necessary."


## B

### *Beck as Witness*

Finally, Kuimelis argues that even if no conflict exists, Beck's disqualification is "mandated by the fact that he is a

19

United States District Court

For the Northern District of California

percipient witness to the events in this action."  Doc #346 at 11.
First, Kuimelis claims that Beck will have to testify regarding
conversations between Beck, Kuimelis and Kuimelis' then-attorney
that occurred during the HUD investigation and prior to Burger's
indictment.  Specifically, Kuimelis states that he showed Beck
drafts of letter responses to HUD inquiries and that Kuimelis spoke
with Beck concerning "Burger's state of mind with respect to the
charging of service fees."  Doc #346 at 11.  Next, Kuimelis claims
that Beck is a material witness to support Kuimelis' statute of
limitations defense against the 72 property owners' claims for
conversion.  Id.  Kuimelis does have standing to bring this motion,
as it "directly affects his access to evidence and the orderly
conduct of the trial of this action." <u>Colyer</u>, 50 F Supp 2d at 974.

        The court will address the last argument first.  Kuimelis
correctly states that the 72 property owners were not "named"
plaintiffs until the FAC was filed on December 1, 2003; the first
four amended complaints simply named Burger and EBMC and stated
that they were suing on behalf of the 72 property owners.  EBMC
claimed it could sue on behalf of the property owners because EBMC
was either the general partner or property manager for each owner.
Kuimelis claims that because the property owners were not
explicitly "named" until December 1, 2003, all of their claims are
barred by the statute of limitations, which expired in May 2003.
According to Kuimelis, Beck will have to testify regarding these
"disputed" dates because, "as [the property owners'] purported
attorney, Beck's failure to name the [property owners] as parties
until after the statute of limitations ran on their claims may be
imputed to the client for statute of limitations purposes."  Doc

United States District Court

For the Northern District of California

#346 at 14.

Beck will not need to testify regarding Kuimelis' alleged statute of limitations defense, for the court has already decided -- as a matter of law -- that the substitution of the property owners in the FAC relates back to the filing of the initial complaint.  See Doc #361 (6/1/04 Order) at 11 ("The court concludes under FRCP 15(c)(3) that the claims of the [property owners] relate back to the filing of the original complaint.").

Finally, Kuimelis claims that Beck will have to testify regarding alleged conversations between Beck, Kuimelis and Kuimelis' previous counsel that occurred prior to the filing of this lawsuit.  It is clear, however, that Kuimelis has waived his right to object to this potential witness conflict.  "It is well-settled that a [party] who is entitled to object to an attorney representing an opposing party * * * but who knowingly refrains from asserting it promptly is deemed to have waived that right." Trust Corp of Montana v Piper Aircraft Corp, 701 F2d 85, 87 (9th Cir 1983) (citation omitted).

Kuimelis himself rings the death knell on this disqualification ground by stating that "Beck will be a material witness at trial [and] [h]e has been on notice of this possibility since his discussions with Kuimelis during the HUD investigation leading up to Burger's indictment" in 1999.  Doc #346 at 11 (emphasis added).  While this statement was no doubt offered to support Kuimelis' disqualification argument, the statement cuts both ways; if Beck has been on notice of this potential conflict since 1999, then so was Kuimelis when this action was first filed in state court in 1999 and removed to this court in 2002.

United States District Court

For the Northern District of California

1   Rather then asserting, or even mentioning this alleged

2   conflict, Kuimelis allowed Beck to take 18 depositions, attend over

3   20 court proceedings and defend numerous motions to dismiss; all

4   without a single word about Beck having to testify.  This 4 ½ year

5   delay not only evidences a waiver of Kuimelis' right to object on

6   this ground, but it also calls into question the propriety of

7   Kuimelis' motive in seeking presently to disqualify Beck.

8        Moreover, it goes without saying that disqualifying Beck

9   less than two months before summary judgment motions are due in

10  this complicated action would work a substantial hardship on the

11  Burger parties.  Accordingly, Kuimelis' motion to disqualify Beck

12  is DENIED.

13

14                                VI

15       Finally, the Burger parties move the court for an order

16  dropping plaintiff Apollo pursuant to FRCP 21.  Doc #437.

17  Originally, the motion was brought pursuant to FRCP 41(a)(2), but

18  the Burger parties have sinced realized their mistake and now couch

19  the motion as a Rule 21 motion.  Doc #464.  The parties agree that

20  Apollo is misjoined in the FAC.  What the parties disagree on,

21  however, is how the court should remedy this misjoinder.

22       Prior litigation between Apollo, Burger, EBMC, B-C

23  Housing and other parties resulted in a negotiated settlement.

24  Pursuant to that settlement, Apollo made a retroactive assignment

25  of rights and responsibilities to B-C Housing, a limited

26  partnership in which Alston Bruner is the general partner.

27  Accordingly, both parties concede that the only person authorized

28  to sue on behalf of Apollo is Bruner.  The Burger parties claim

22

that:

> [d]ue to inadvertence and innocent mistake, [Beck]
> failed to apprehend this transfer of interest [and]
> erroneously believed that EBMC remained the
> managing partner of Apollo.  Acting in accordance
> with this misconception, counsel for EBMC named
> Apollo as a party to this suit without the
> authorization of Mr Bruner * * *.
> Doc #436 at 3.

Kuimelis argues that the court should not drop Apollo. Specifically, he claims that in his forthcoming motion for summary judgment, he intends to argue for the disposition of the FAC based upon, among other things, EBMC and Beck's "failure to secure ratification of the lawsuit by the [property owners] after full disclosure of the controversies surrounding this litigation before joining them as parties pursuant to Rule 17(a)."  Doc #440 at 5. Kuimelis plans to use the misjoinder of Apollo as evidence that Beck "unilaterally added the [property owners] without their knowledge or consent."  Id at 7.  Dropping Apollo would, according to Kuimelis, allow Beck and EBMC "to moot the blatant misconduct he has proven EBMC and Beck have engaged in during this litigation." Id at 8.

To force Bruner to remain in this lawsuit is unwarranted under these circumstances.  The court GRANTS the motion to drop Apollo as a plaintiff in the FAC.


VII

In sum, the court DENIES the Burger parties' motion to dismiss the SACC (Doc #410) and STRIKES ¶¶ 93, 99 and 105 inasmuch as they allege injury to Kuimelis' business reputation.  The court GRANTS the Burger parties' motion for a more definite statement

United States District Court

For the Northern District of California

United States District Court

For the Northern District of California

regarding the SACC's eleventh cause of action (Doc #410), Kuimelis must serve and file a more definite statement not later than May 23, 2005. The court DENIES the Burger parties' motion to dismiss the ACC and DENIES the motion for a more definite statement (Doc #412).

The court DENIES Kuimelis' motion to intervene (Doc #345) and DENIES his motion to disqualify Beck (Doc #346). Finally, the court GRANTS the Burger parties' motion to drop Apollo (Doc #436).

IT IS SO ORDERED.



VAUGHN R WALKER

United States District Chief Judge

24